Darrin A. MADDEN, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8805–CR–453.

Supreme Court of Indiana.

Feb. 12, 1990.

William L. Soards, Soards, Carroll & Fruechtenicht, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A trial by jury resulted in the conviction of appellant of Attempted Rape and Burglary, Class A felonies, for which he received sentences of fifty (50) years each, Confinement and Robbery, Class B felonies, for which he received sentences of twenty (20) years each, the sentences for Rape and Burglary to run consecutively and the other sentences to run concurrently, giving a total executed time of one hundred (100) years.

The facts are: The victim resided in Indianapolis. On August 22, 1986, a young man came to her house asking if he could cut the grass. The victim told him that her husband would do that, and the young man

rode away on a bicycle. Approximately forty-five minutes later, the victim's dog began growling, and when she went to investigate, she discovered a man in the catchall room of her house with a woman's nylon stocking over his head. He was otherwise dressed identically and of the same size as the young man who had asked to cut her grass.

The man grabbed the victim, and during the struggle, he drew a knife and beat the victim on the head with the handle of the knife and also struck her dog. He asked her for money and she directed him to her purse. He told her that was not all he wanted and took her into the bedroom, tore off her clothing, including her underwear, and threw her on the bed. In the ensuing struggle, the victim kicked the man in the groin; then he left the house. She ran to a neighbor's house and the police and an ambulance were called to the scene.

At the hospital, it was necessary for doctors to suture lacerations on her fingers and her lip. When the victim returned home, she noticed that her purse had been moved and that her billfold was missing from the purse. Her billfold and credit cards later were found in a neighbor's yard; approximately $17 in cash was missing.

At police headquarters, a pictorial composite was made up of several interchangeable plastic foils, which under the victim's direction were manipulated by the technician in order to come up with an approximate likeness of the perpetrator. When this was accomplished, photographs were taken of the composite picture. Following appellant's arrest, the victim picked his photograph from a photographic array. After selecting appellant's photograph, she asked to see another photograph of the same person, which was provided by the police.

Appellant claims the trial court erred in overruling his pretrial motion to suppress the victim's identification evidence on the ground that her testimony was tainted by an unduly suggestive pretrial photographic identification procedure. However, at the time the victim's evidence was offered at trial, appellant made no objection. Failure to object at that time constituted a waiver of the issue. *Lee v. State* (1988), Ind., 519 N.E.2d 146.

Notwithstanding the waiver, when we examine the evidence in this case, it indicates that the victim was shown six photographs of black males who were all of similar age and appearance. She was told that the person who had attacked her might or might not be included in the array. Appellant claims that his photograph was the only one in the array which showed a partial profile with the eyebrows raised, thus making it unique from the other photographs. We see nothing about this difference in the pose that would suggest to the victim that the subject pictured was her attacker. Appellant further argues that the displaying of a second photograph identified as that of appellant to the victim, at her request, tainted the entire identification. However, because the victim already had picked appellant's photograph from the array, we see no harm to appellant in the victim's confirmation of her identification by asking to see another photograph of appellant.

We further would point out that in-court identification is permissible if there is sufficient independent basis for the witness's identification. *Lyons v. State* (1987), Ind., 506 N.E.2d 813. Although appellant had a woman's stocking pulled over his head at the time of the attack, the victim testified that she could identify him by his clothing, his build, and the general facial features that she could discern through the stocking. She based this identification on the fact that she had observed appellant some thirty-five minutes prior to the attack. Such evidence provided a sufficient independent basis for her identification testimony at trial. *Id.* at 816. We see no error in the admission of the victim's identification testimony.

Appellant claims the trial court erred in admitting State's Exhibit No. 18, which was a photograph of the composite picture which had been produced by the manipulation of the interchangeable plastic

foils. Appellant claims it was error to admit a copy of the composite picture, taking the position that only the original should have been placed in evidence. However, the State correctly points out that the "original" in fact was the composite produced by the plastic foils and that the only permanent picture produced thereby was the photograph of such foils. The foils themselves of course were immediately disassembled for use in future cases. Although the best evidence rule requires production of the original writing when its terms are material, *Howard v. State* (1976), 264 Ind. 275, 342 N.E.2d 604, this Court has held that photocopies are admissible into evidence to the same extent as an original. *Leavell v. State* (1983), Ind., 455 N.E.2d 1110.

In a case of this type, where plastic foils are used to generate a temporary likeness, the nearest thing to an original which the State can produce is a photograph of the likeness so produced. It would be totally unrealistic for us to require that those plastic foils be retained in their arranged position and introduced in evidence. The photograph in such a case is entirely adequate.

■■ Appellant claims the trial court erred in overruling his objections to jury Instructions Nos. 39 and 40. Instruction No. 39 stated:

"It is not essential in this cause that the testimony of the prosecuting witness be corroborated by other evidence. It is sufficient if, from all the evidence, you believe beyond a reasonable doubt that the crimes were committed by the Defendant as alleged."

Instruction No. 40 stated:

"The flight of a person after he is accused or charged with a crime, though not proof of guilt, is evidence of consciousness of guilt and ... is a circumstance which may be considered by you in the connection with all the other evidence to aid you in determining the question of guilt or innocence."

Appellant takes the position that Instruction No. 39 is erroneous in that it overemphasizes the testimony of the victim. It is true that when more than one witness has testified in a case, and especially when their testimony is not consistent one with the other, it is improper for the trial court to comment on or overly emphasize a particular witness's testimony. *Phillips v. State* (1986), Ind., 496 N.E.2d 87. However, in the case at bar, the victim was the only witness to testify concerning the identification of appellant and the acts her perpetrated upon her.

It is totally unrealistic to take the position that it was necessary for the prosecuting witness's testimony to be corroborated by other evidence. The instruction was a proper instruction. *See Washburn v. State* (1986), Ind., 499 N.E.2d 264. Inasmuch as the instruction was not repeated in other instructions, we cannot say that it was repetitious or unduly emphasized a particular aspect of the case. *See Starks v. State* (1987), Ind., 517 N.E.2d 46.

■ As to Instruction No. 40, the evidence shows appellant first was approached in his home by the police during their investigation of the crime. He was told that he was a suspect in the burglary. However, he was not arrested at that time. Shortly thereafter, appellant fled to the state of Georgia and the state of Indiana was required to extradite him from Georgia in order to return him for the instant trial.

Appellant takes the position that this is not sufficient evidence of flight to justify the giving of a flight instruction. We cannot agree with appellant's position in this regard. The evidence in the case clearly demonstrates that he in fact did flee to Georgia and did not voluntarily return therefrom. Such evidence is sufficient for the giving of the flight instruction. *King v. State* (1988), Ind., 531 N.E.2d 1154.

Appellant claims the trial court erred in overruling his objection to the testimony of Karen Clapper during the sentencing hearing. At the sentencing hearing, Karen Clapper testified that she had been the victim of a similar assault, including the use of a bicycle by the person who attacked her. However, she was unable to identify appellant as that person. There can be little doubt that Karen Clapper's testimony

would not have been proper during the case-in-chief. However, her testimony was received at the sentencing hearing.

 At sentencing, a trial court is not confined to evidence which would be admissible at trial. In fact, it is required to receive a presentence report, which by its very nature concerns, among other things, appellant's criminal history, including many hearsay items. Mrs. Clapper's testimony was not heard by the jury and had no influence upon the conviction. The reasons given by the trial court for the enhancement of appellant's sentence, although including the many things in appellant's criminal background, were not based upon Clapper's testimony. As to those matters that are decided by the trial judge, this Court will presume that the trial judge considered only evidence which was properly before him. *Pinkston v. State* (1982), Ind., 436 N.E.2d 306. Although the testimony of Karen Clapper added very little to the case, we see no reversible error in view of the fact that it was not presented to the jury and had no influence on appellant's conviction.

Appellant claims the evidence is insufficient to support his conviction. He cites *Reynolds v. State* (1970), 254 Ind. 478, 260 N.E.2d 793 for the proposition that where circumstantial evidence must be relied upon for conviction, it must be so conclusive and compelling in character that it excludes every reasonable hypothesis of the presumption of innocence of the defendant. However, the State cites *Pearson v. State* (1988), Ind., 523 N.E.2d 747 for the proposition that if there was substantial evidence of probative value to support the finding of guilt beyond a reasonable doubt, the court on appeal will affirm the conviction.

Appellant bases his claim of insufficiency of the evidence in part upon his contention that the victim's identification testimony should not have been allowed. In view of our ruling that her testimony was proper, we have sufficient evidence from which the jury could have found that appellant in fact was the person who attacked the victim.

Appellant contends that the evidence in this case merely establishes a suspicion of guilt and is not sufficient to sustain a conviction. He states that there was no evidence with respect to any of his fingerprints at the scene nor was there any evidence presented that any of the stolen personal property was found upon or traced to appellant. When questioned concerning the lack of fingerprints, police officers testified it was extremely difficult to lift fingerprints from the victim's leather purse or her leather billfold and that none were found. In view of the identification evidence, we cannot say that the lack of fingerprints alone is sufficient to cause a reversal of the case.

 Appellant also claims that there is insufficient evidence to show that he engaged in conduct constituting a substantial step toward the commission of rape. However, the victim's testimony that he told her he wanted something more than her purse, that he forced her into the bedroom and stripped off her clothing including her underwear, and that he was attempting to remove his pants when she kicked him in the groin is sufficient evidence upon which the jury could find that appellant's intention was to rape the victim. We find the evidence in this record sufficient to support the verdict of the jury.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DICKSON, J., concurs in result.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

I find that I am unable to vote to affirm this conviction after taking a close look at jury instruction No. 39. The instruction stated as follows:

It is not essential in this cause that the testimony of the prosecuting witness be corroborated by other evidence. It is sufficient if, from all the evidence, you believe beyond a reasonable doubt that

the crimes were committed by the Defendant as alleged.

At trial there was extensive corroboration of the testimony of the victim that she was assaulted, stemming from her immediate reports, torn clothing, and physical injuries, but there was no corroboration, direct or circumstantial, of her testimony serving to identify appellant as the person committing that assault. Defense counsel objected to this instruction on the ground that it gave undue attention "to the uncorroborated testimony of one (1) eyewitness."

This instruction is accurately categorized as an instruction on credibility. It instructs the jury on the proper manner of determining the credibility of a witness and the weight to be given her testimony. The general rule in Indiana governing such instructions on the credibility of witnesses is that they should be general and apply equally to all of the witnesses for the State and the defendant. *Swanson v. State* (1944), 222 Ind. 217, 52 N.E.2d 616. It is, for example, reversible error to single out the subject of the credibility of the defendant for special definition. *McDonough v. State* (1961), 242 Ind. 376, 175 N.E.2d 418. The erroneous character of such an instruction on the credibility of a single witness is its tendency to invade the province of the jury in determining the credibility of such witness through a suggestion or intimation of an opinion as to the witness's credibility or the weight to be given to the testimony of that witness.

Ordinarily the general credibility and weighing instruction is sufficient. That was the basis for the holding in *Hackett v. State* (1977), 266 Ind. 103, 360 N.E.2d 1000. There the identification of Hackett rested solely upon the testimony of the victim of the crime. Hackett unsuccessfully sought an instruction exhorting the jury to receive that identification testimony with caution and to give consideration to the witness's opportunity to observe, his certainty, any prior inconsistent identifications and any discrepancies between the prior descriptions and the accused. The Court held that the general instruction on credibility of witnesses was sufficient to advise the jury as to the credibility of the lone identification witness and that the special instruction sought was properly rejected because it tended to "signal special attention upon the testimony of a single eyewitness." *Id.* at 108, 360 N.E.2d at 1003. It would appear that the trial judge in the case at bar would have been in accord with the ruling in *Hackett* had he refused to give this special instruction on the credibility of the victim.

The majority opinion properly calls attention to this Court's opinion in *Washburn v. State* (1986), Ind., 499 N.E.2d 264. There the Court considered an instruction which stated:

> Ladies and gentlemen of the jury, you may convict the defendant solely on the uncorroborated testimony of the prosecuting witness, provided her testimony convinces you of the defendant's guilt beyond a reasonable doubt.

This Court sustained the giving of this instruction over the objection that it was so repetitive and cumulative of the general instruction on the credibility of witnesses as to overemphasize a particular phase of the case. The Court held that it did not repeat the command of the general credibility instruction and thus properly survived the objection. *Washburn* is not *stare decisis* here because of the difference in the focus of the objections in the two cases.

An analysis of Instruction 39 is therefore required. In regard to it, the following points are to be made:

1. The oft-stated rule in appellate court opinions that a conviction may rest upon the uncorroborated testimony of the prosecuting witness, *Croney v. State* (1969), 252 Ind. 319, 247 N.E.2d 501, is not a standard to be applied by the trier of fact, but is instead a standard to be applied by the trial or appellate court in determining the sufficiency of evidence as a matter of law.

2. The lack of corroboration for testimony is a legitimate element to be considered by the trier of fact in determining the credibility of witnesses and the weight to be accorded their testimony.

3. The lack of corroboration for testimony can be included in the general instruction on credibility and weight and thus be

presented in a balanced and fair fashion as applicable to the witnesses of both the prosecution and the defense.

4. The Indiana Pattern Jury Instructions (Criminal) contain no express reference to the lack of corroboration for testimony, but do refer to it indirectly in Preliminary Instruction 1.23, Credibility of Witnesses—Weighing Evidence, wherein it is stated:

> In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience, and common sense gained from day to day living. The number of witnesses who testify to a particular fact, or the quantity of evidence on a particular point need not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

5. Instruction 39, wherein it states, "It is not essential in this cause that the testimony of the prosecuting witness be corroborated by other evidence. . . ." strongly suggests and intimates that the jury, as trier of fact, should not permit the lack of corroboration for the identification testimony of the prosecuting witness to reduce its assessment of her credibility and the weight of her testimony beneath that warranting a verdict of guilty. A jury, confronted with the lone and uncorroborated identification testimony of the prosecuting witness, would receive this instruction as a restraint upon its evaluation of the diminishing effect of the lack of corroboration upon the credibility of that witness and the weight to be accorded her testimony. If, in deliberation, the jury found the evidence to fall for the moment on the fence between that which would support conviction and that which would not, it might reasonably respond to the command of Instruction 39 by diminishing the value of, or discarding altogether, the lack of corroboration element, and thus permit its evaluation of the identification evidence to rise to or above that level which warrants moral certainty beyond a reasonable doubt.

Based upon the foregoing considerations, it was error and an abuse of discretion for the trial judge to give Instruction 39, as it gave special and undue attention to a specific witness, namely the key witness, upon whose lone testimony rests the identification of appellant as the person committing this assault. *Hackett*, 266 Ind. 103, 360 N.E.2d 1000. This conviction should be reversed and a new trial ordered.